# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAKE DANIELS, a minor, by and through his guardian ad litem, Jessica Daniels,<br><br>Plaintiff,<br><br>v.<br><br>OCEANSIDE UNIFIED SCHOOL DISTRICT, and DOES l through 25, inclusive,<br><br>Defendants. | Case No.:  3:25-cv-00601-RBM-KSC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>**[Doc. 4]** |

Pending before the Court is Defendant Oceanside Unified School District's ("Defendant" or the "District") Motion to Dismiss ("Motion to Dismiss"). (Doc. 4.) On April 7, 2025, Plaintiff Jake Daniels ("Plaintiff"), a minor, by and through his guardian ad litem, Jessica Daniels ("Plaintiff's mother"), filed an Opposition to Defendant's Motion to Dismiss ("Opposition"). (Doc. 5.) Defendant filed a Reply on May 5, 2025. (Doc. 6.)

The Court finds this matter suitable for determination without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons set forth below, Defendant's Motion to Dismiss is **<u>GRANTED</u>**.

//

//

1

## I.    BACKGROUND

**A.    Factual Background[1]**

Plaintiff, a minor student, was born with severe mental disabilities and is nonverbal. (Doc. 1-2 ¶¶ 3, 16.)[2]  Plaintiff was a student at North Terrace Elementary School ("North Terrace"), a school within the District.  (*Id*. ¶ 3.)  Plaintiff has had an Individualized Education Program ("IEP") at the District since 2020, as required under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq.* ("IDEA").  (*Id*. ¶ 17; *see* Doc. 5 at 7.)  His "IEP specifically required the District to always have constant one-to-one supervision while [he] was at school."  (Doc. 1-2 ¶ 23.)  It "also required his classroom door to be closed, which was intended to prevent elopement."  (*Id*.)  The IEP reflected his parents' and the District's "concerns with his elopement."  (*Id*. ¶ 18.)  Specifically, the IEP noted that Plaintiff "would run away spontaneously," with "no antecedent cause and can happen at any time," and that "in the past month his eloping has increased and has been [an] area of concern."  (*Id*. ¶ 18.)

Plaintiff "had a lengthy history of eloping from" school campuses within the District. (*Id*. ¶ 26.)  He "once eloped from Libby Elementary School and twice from Laurel Elementary [which are both] part of the District."  (*Id*. ¶ 27.)  Plaintiff also eloped from North Terrace prior to the incident at issue.  (*Id*. ¶ 28.)  Plaintiff "had regularly recurring IEP reviews and evaluations, with the most recent occurring prior to the incident on March 4, 2024."  (*Id*. ¶ 17)  "During the IEP meeting, [Plaintiff's mother] shared that [Plaintiff] regularly elopes."  (*Id*. ¶ 21.)  In particular, Plaintiff's mother stated that Plaintiff elopes at home, that he "knows how to take the dowel out of the window/door to open them [, and]

---

[1]  The factual summary in this section reflects Plaintiff's allegations, not conclusions of fact or law by this Court.  Well-pleaded factual allegations are accepted as true for purposes of this Motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2]  The Court cites the paragraph numbers of the Complaint and the CM/ECF electronic pagination for other citations unless otherwise noted.

3:25-cv-00601-RBM-KSC

that there are seven locks on the front door at her home and all windows and doors in the house are locked to keep [Plaintiff] from eloping." (*Id*. ¶ 21.) Six District employees were in attendance at Plaintiff's IEP meeting including: "Administrator Dieter Swank, General Education Teacher Charlene Martinez, Education Specialist Michael Brown, Speech-language pathologist (SLP) Charito Shook, Occupational Therapist (OT) Kimberly Jackson, and Home ABA therapist BCBA Emily Wanous." (*Id*. ¶ 22.)

On June 13, 2024, Plaintiff enrolled as a student at North Terrace for the 2024 summer school session. (*Id*. ¶ 25.) Plaintiff was seven years old at the time. (*Id*. ¶ 24.) On June 17, 2024, Plaintiff ran away from North Terrace and was lost for over 6 hours. (*Id*. ¶¶ 31–32.) "Upon investigation, the school's gate was not secure and had a hole in it," which allowed Plaintiff to escape. (*Id*. ¶ 33.) Plaintiff's "classroom door was also not in a closed position." (*Id*.) Additionally, Plaintiff had an "AirTag on him, which would locate him by GPS in the event he was lost." (*Id*. ¶ 34.) "However, the Camp Pendleton military base scrambled the GPS signal [and Plaintiff's] last GPS ping happened one block from the school." (*Id*.) As a result of this incident, Plaintiff "suffered physical injuries and severe dehydration." (*Id*. ¶ 35.) "His liver reading levels were high and white blood cells doubled." (*Id*.) "In addition to physical injuries, [Plaintiff] suffered psychological injuries, which resulted in significant behavioral changes." (*Id*.)

**B.    Procedural Background**

On December 30, 2024, Plaintiff commenced this action in the Superior Court of California, County of San Diego. (*See* Doc. 1-2.) On March 13, 2025, Defendant removed the action to this Court. (*See* Doc. 1.) The action was transferred to the undersigned on March 19, 2025. (Doc. 3.) Plaintiff brings the following four causes of action: (1) negligence; (2) negligent hiring, supervision, and retention; (3) dangerous condition of public property; and (4) violation of the Americans with Disabilities Act ("ADA"). (Doc. 1-2 ¶¶ 38–86.) As relief, Plaintiff seeks general and special damages, attorney's fees, interests, and costs. (*Id*., Prayer for Relief at 14–15.)

3:25-cv-00601-RBM-KSC

## II.   **LEGAL STANDARD**

Under Rule 12(b)(6), an action may be dismissed for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556–57).  For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Nor is the Court "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted)

## III.   **DISCUSSION**

### A.   **Meet-and-Confer Requirement**

Plaintiff asserts that Defendant failed to satisfy their meet-and-confer obligations required under this Court's Civil Chambers Rules because it "*never* attempted to have a conference regarding this Motion."  (Doc. 5 at 11–12 (emphasis in original).)  Plaintiff does not seek dismissal, or any other form of relief, based on Defendant's failure to comply with the undersigned's Civil Chamber Rules.  (*See id*.)

4

3:25-cv-00601-RBM-KSC

The relevant rule provides that parties must meet-and-confer in good faith at least seven days prior to the filing of a noticed motion "to discuss thoroughly—preferably in person—the substance of the contemplated motion and any potential resolution." The Hon. Ruth Bermudez Montenegro Civ. Chambers R. ("Civil Chambers Rules") III.A.

In its Reply, Defendant asserts it had "minimal time to review" the Civil Chamber Rules and was unable to confer with Plaintiff seven days before filing the instant Motion to Dismiss because this action was transferred to the undersigned on March 19, 2025—eight days before it filed the Motion to Dismiss. (Doc. 6 at 2.) Defendant argues that the Court should resolve the Motion to Dismiss on its merits because "Plaintiff has not suffered prejudice as a result of this failure." (*Id.*) The Court, in its discretion and in the interests of justice, considers the Motion to Dismiss on its merits. Counsel are warned to adhere to this District's Civil Local Rules, the undersigned's Civil Chambers Rules, and the federal rules in the future. Future motions that fail to meet this requirement will be stricken.

**B.    ADA**

Plaintiff alleges violations of Title II of the ADA arising from the District's failure to provide "reasonable accommodations that he needs in order to enjoy meaningful access to the benefits of" a public education. (Doc. 1-2 ¶¶ 75–76, 79(a).).[3] The District argues that Plaintiff fails to state an ADA claim because Plaintiff does not allege: (1) the District "excluded Plaintiff from participation or denied benefits to him on the basis of his disability"; and (2) the District's "services, programs, or activities are not readily accessible to and usable by individuals with disabilities." (Doc. 4-1 at 9.)

---

[3]  As pled, Plaintiff alleges disability discrimination based on a failure to accommodate. As Plaintiff does not allege a systemic failure of any specific policies or procedures, his claim fails to the extent it is based on a disparate treatment or disparate impact theory. *See Payan v. Los Angeles Cmty. Coll Dist.*, 11 F.4th 729, 738 (9th Cir. 2021) ("[A] reasonable accommodation claim is focused on an accommodation based on an individualized request or need, while a reasonable modification in response to a disparate impact finding is focused on modifying a policy or practice to improve systemic accessibility").

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "Title II emphasizes 'program access,' meaning that a public entity's programs and services, viewed in their entirety, must be equally accessible to disabled persons." *Cohen v. City of Culver City*, 754 F.3d 690, 694–95 (9th Cir. 2014). Title II's implementing regulations describe "public entities' statutory obligations with more specificity, but a public entity may violate the ADA even if no regulation expressly proscribes its particular conduct." *Id.* at 695. As relevant here, the implementing regulations require public entities to make reasonable modifications to avoid discrimination against people with disabilities. *See* 28 C.F.R. § 35.130(b)(7). While there are no ADA regulations specifically concerning the education of children with disabilities, the ADA has been interpreted co-extensively with the special education requirements promulgated under § 504 of the Rehabilitation Act ("RA"). *See* 28 C.F.R. § 35.103(a); *Bragdon v. Abbott*, 524 U.S. 624, 631–32 (1998) (construing "the ADA to grant at least as much protection as provided by regulations implementing the [RA].") (citing 42 U.S.C. § 12201(a)); *see also Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999) (noting ADA and § 504 claims are routinely considered together because "[t]here is no significant difference in analysis of the rights and obligations created by" the statutes). Thus, in the context of educational services, the ADA and the RA both require public schools to provide reasonable accommodations to students with disabilities to allow them access to public education. *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1203–04 (9th Cir. 2016).

"A plaintiff bringing suit under . . . Title II of the ADA must show: (1) [he] is a qualified individual with a disability; (2) [he] was denied 'a reasonable accommodation that [he] needs in order to enjoy meaningful access to the benefits of public services;' and (3) the program providing the benefit receives federal financial assistance." *Paradise Valley*, 815 F.3d at 1204 (quoting *Mark H. v. Hamamoto*, 620 F.3d 1090, 1097 (9th Cir.

6

3:25-cv-00601-RBM-KSC

2010)). "The reasonable accommodation element can be satisfied by showing the school wrongly denied an accommodation request or failed to comply with a binding regulation." *Csutoras v. Paradise High Sch.*, 12 F.4th 960, 969 (9th Cir. 2021) (citing *Paradise Valley*, 815 F.3d at 1204); *see also McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004) (finding a defendant's failure to provide reasonable accommodations sufficiently demonstrates discrimination "'by reason of' [ ] disability for the purposes of overcoming a Rule 12(b)(6) motion to dismiss.").

When a plaintiff seeks monetary damages under Title II of the ADA, as here, he must also allege the public entity "intentionally or with deliberate indifference fail[ed] to provide meaningful access or reasonable accommodation to disabled persons." *Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008). Deliberate indifference requires "both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001) (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1988)). "[A] failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness." *Id*. "In other words, the 'deliberate refusal' to accommodate a plaintiff's disability-related needs can violate the ADA." *Mel Marin v. Trs. of the Santa Barbara City Coll. Dist.*, Case No. 2:25-cv-11035-JWH-SSC, 2026 WL 49332, at *4 (C.D. Cal. Jan. 7, 2026).

Here, the Parties do not dispute that Plaintiff is a qualified individual with a disability and that the District receives federal funding. (Doc. 1-2 ¶¶ 73, 86.) As to the reasonable accommodation element, Plaintiff does not claim that the District denied any of his accommodation requests.[4] Rather, Plaintiff claims the District "took no action to accommodate his disability" because it did not provide certain accommodations as outlined

---

[4] Plaintiff does not specify when his elopement issues began, when he eloped from the other schools, or when the accommodations intended to prevent his elopement were included in his IEP. (*See* Doc. 1-2 ¶¶ 18, 21, 26–28, 82.) The Court therefore construes Plaintiff's allegations as pertaining only to the incident on June 17, 2024.

3:25-cv-00601-RBM-KSC

in his IEP on June 17, 2024. (Doc. 1-2 ¶ 82.) Plaintiff alleges these accommodations—constant one-on-one supervision and closed classroom doors—were intended to prevent his elopement from school grounds and therefore necessary for him to enjoy meaningful access to the benefits of public school. (*Id*. ¶¶ 23, 75–76.)[5] He further alleges the District's failures were "deliberately indifferent and . . . a product of discriminatory animus to [his] needs because he had eloped off [a District school] at least four (4) times prior to the incident." (Doc. 1-2 ¶ 82.) Plaintiff's parents also informed District employees that Plaintiff regularly elopes, that he knows how to take the dowels out of windows and doors to open them, and that there are seven locks on the front door of his home to prevent him from eloping. (*Id*. ¶¶ 18, 21.) Making all reasonable inferences in favor of Plaintiff, Plaintiff plausibly alleges that the District was "alerted . . . to his need for accommodation." *Duvall*, 260 F.3d at 1139.

Plaintiff's own allegations, however, indicate that the District did not fail to accommodate him much less with the required "element of deliberateness." *See Duvall*, 260 F.3d at 1139. In response to such knowledge, the District adopted Plaintiff's IEP, noted its concerns about Plaintiff's elopement issues, assigned a paraeducator to supervise Plaintiff at North Terrace, and held "regularly recurring IEP reviews and evaluations, with the most recent occurring prior to the incident on March 4, 2024." (*Id*. ¶¶ 17–18, 29, 31.) As the District correctly notes, "the Complaint alleges Plaintiff had an IEP meeting and six [District] employees participated." (Doc. 4-1 at 9; *see* Doc. 1-2 ¶ 23.) In addition to Plaintiff's assigned paraeducator, Plaintiff was also supervised by several District employees including his teacher. (Doc. 1-2 ¶¶ 29, 31.) Based on the facts alleged, Plaintiff fails to raise a plausible inference that the District deliberately failed to act in response to his need for accommodation. *See Duvall*, 260 F.3d at 1139 ("[B]ureaucratic slippage that

_____

[5] Without more, the Court is unable to ascertain whether Plaintiff's failure to accommodate claim is also premised on the District's alleged failure to secure the school's gate. (*See* Doc. 1-2 ¶ 33.)

3:25-cv-00601-RBM-KSC

constitutes negligence rather than deliberate action or inaction" is not sufficient). Accordingly, Plaintiff has not offered sufficient non-conclusory allegations of intentional discrimination by the District to support a claim for damages. *See D.J. v. Walnut Creek Sch. Dist.*, Case No. 24-cv-02660-LJC, 2025 WL 1114453, at *6 (N.D. Cal. Apr. 15, 2025) ("Knowledge that a student with a disability exhibited behavioral issues does not in itself support an inference of deliberate indifference, particularly where the reports indicated that [school] staff responded to each issue.").

In his Opposition, Plaintiff contends that the District denied him available and reasonable accommodations because it materially failed to implement his IEP in violation of the IDEA. (Doc. 5 at 23–24 (citing *Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 823 (9th Cir. 2007)).) Plaintiff's contention relies substantially on the IDEA's requirement that public schools must provide a free appropriate public education ("FAPE") to students with disabilities. (*See id*.) However, Plaintiff does not bring a claim under the IDEA.[6] While § 504's implementing regulations, which the ADA adopts, also require that public schools "provide a free appropriate public education" to students with disabilities, the FAPE requirements differ from those under the IDEA. *See Paradise Valley*, 815 F.3d at 1203; 34 C.F.R. § 104.33(a); *see also Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 170–71 (2017) ("[T]he IDEA guarantees individually tailored educational services, while Title II and § 504 promise non-discriminatory access to public institutions."). As such, "a showing that FAPE was denied under the IDEA does not necessarily establish" such a denial under § 504 or the ADA. *Paradise Valley*, 815 F.3d at 1203–04 (citation omitted); *Lemahieu*, 513 F. 3d at 933 ("Plaintiffs who allege a violation of the FAPE requirement in . . . § 504's regulations may not obtain damages simply by

---

[6] Plaintiff seeks only damages under the ADA, not equitable relief which may require exhaustion under the IDEA. *See Martinez v. Newsom*, 46 F.4th 965, 973 (9th Cir. 2022) ("A plaintiff seeking relief for the denial of a FAPE ordinarily must exhaust the administrative process before filing a lawsuit, even if the plaintiff asserts claims arising under the Constitution or a federal statute other than the IDEA.").

3:25-cv-00601-RBM-KSC

proving that the IDEA . . . requirements were not met.").[7]  Moreover, to the extent Plaintiff claims the services provided by the District did not meet his individual educational needs "as adequately as the needs" of his non-disabled peers, he fails to plead the required "comparison between the manner in which the needs of disabled and non-disabled children are met."  *Lemahieu*, 513 F. 3d at 933; *see* 34 C.F.R. § 104.33(b)(1).  The Court therefore finds this argument unavailing.

Accordingly, Plaintiff's ADA claim is **DISMISSED WITH LEAVE TO AMEND.** *See* Fed. R. Civ. P. 15(a); *Cook v. N. Cal. Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.").

**C.    Supplemental Jurisdiction**

A district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.") (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).  Having dismissed the only federal claim for failure to state a claim, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.  28 U.S.C. § 1367(a).  Plaintiff's remaining state law claims are therefore **DISMISSED WITHOUT PREJUDICE** provided Plaintiff can state a cognizable ADA claim.

[7] The Court also notes that Plaintiff alleges the District adopted his IEP (*see* Doc. 1-2 ¶ 17) which "is sufficient to provide a FAPE under [s]ection 504." *McKnight v. Lyon Cty. Sch. Dist.*, 812 Fed. App'x 455, 456 (9th Cir. 2020) (citing *Lemahieu*, 513 F. 3d at 933).

10

3:25-cv-00601-RBM-KSC

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. 4) is **GRANTED** and the Complaint is **DISMISSED WITH LEAVE TO AMEND**.  Plaintiff may file an amended complaint fixing the identified deficiencies  on or before **March 2, 2026**.

**IT IS SO ORDERED**.

DATE:  February 2, 2026

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

11

3:25-cv-00601-RBM-KSC